Mrs. Louise Gordon Jones *et al v.* W. E. Jones *et al.*

*Nashville,* December Term, 1920.

WILLS. Instrument not revoked by testatrx's mere intention, not followed by act of destruction, mutilation, cancellation.

Where testatrix, fatally ill, requested her daughter to destroy her will, stating she did not want to die with it in existence, but the daughter said she would rather not do so without first advising with her father, a lawyer and probate judge, and the father and husband told testatrix to put her mind at rest, that the will would never be set up, and it was put back in the box, testatrix dying some twelve hours later, there was no effectual revocation; the mere intention, unaccompanied by some act of destruction, mutilation, or cancellation, not being sufficient, and whatever authority testatrix gave her husband or daughter to destroy the will having ended at her death.

Cases cited and approved: Ford v. Ford, 26 Tenn., 92; Smiley v. Gambill, 39 Tenn., 164.

FROM MAURY.

Appeal from the Circuit Court of Maury County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals, from the Supreme Court.—Hon. W. B. Turner, Judge.

G. T. Hughes, Jr., and Hugh T. Shelton, for appellants.

W. J. Towler and L. Z. Turpin, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

This case involves an issue of *devisavit vel non.*

The circuit judge, sitting as a jury by agreement of the parties, sustained the will of Mrs. Virginia C. Gordon.

Upon an appeal in the nature of a writ of error by the contestants to the court of civil appeals, that court affirmed the judgment of the trial court, and the case is now before this court upon the petition of contestants for a writ of *certiorari,* and for review.

The facts are uncontroverted, and a question of law only is involved. The question is whether there was a revocation by Mrs. Virginia C. Gordon of her will before her death, which occurred April 1, 1908.

Mrs. Virginia C. Gordon executed a will on June 3, 1891, devising her property to her two children, Mrs. Louise Gordon Jones and Powhatan Graham Gordon, for life, with remainder to their children. Previous to the date of the execution of her will, her son, Powhatan Graham Gordon, contracted a marriage which had resulted unhappily to the contracting parties, and was not favored by the testatrix, and the evidence tends to show that the testatrix executed this will for her son's protection. Thereafter there was a separation between the son and his wife, and they were finally divorced. The son contracted a second marriage, which proved a happy one, and the testatrix began to express dissatisfaction with the will and an intention to destroy it; but on June 11, 1907, she added a codicil to the will of June 3, 1891, wherein she expressly

approved the limitation to her children for life, with the remainder to her grandchildren, although she continued from time to time to express dissatisfaction with the will and an intention to revoke it.

At the time of her death, in April, 1908, she was past seventy years of age, and her two children were more than forty years of age. Both of her children at that time, and now, have living issue, and the contest is between the children, who have a life estate in the property devised, and the grandchildren, who have remainder interests therein.

On the day of her death the testatrix, upon being informed that her condition was serious asked her daughter to get her bunch of keys and bring to her a little tin box out of the wardrobe. This request was complied with by the daughter, when the testatrix unlocked the box and took therefrom a paper which she stated was her will, and asked her daughter to destroy it, saying she felt she could not live long, and added:

"I don't want to die with it in existence. Take it out right now and destroy it."

Her daughter told the testatrix that she would rather not do so without first advising with her father, who was a lawyer, and who had been the probate judge of Maury county for a number of years. Thereupon the daughter called her father, and, in the presence of the testatrix, told him that her mother had asked her to destroy the will, but that she did not want to do so without telling him about it, and the father then said to the testatrix:

"Jenny, are you still worrying over that old will? I promise you on my word of honor that it shall be destroyed. It shall never be set up, so just rest your mind in peace; think of other things, and do not worry a minute. Daughter, relock that box and put it back."

About twelve hours later the testatrix died without the will having been destroyed.

The husband of testatrix's daughter testified: "Judge Gordon stated the will should be set up, or that it was his desire that the will be set up, but stated to him (witness) that he could not set it up or offer it for probate, because he had promised his wife that the will would be destroyed and never set up."

Judge Gordon, the testratrix's husband, died in December, 1914, and about a year after his death, and about seven years after the death of the testatrix, the daughter and son destroyed the will. In the meantime, however, one of the grandchildren of the testatrix, who had been named as one of the executors of the will, had made and preserved a copy of it, and, after setting the will up by proper proceedings in the chancery court of Maury county, offered it for probate in the probate court of Maury county on December 5, 1918. Thereupon, the two children of the testatrix, Mrs. Louise Gordon Jones and Powhatan Graham Gordon, appeared to contest the will. The proceeding, in due course, was removed to the circuit court for trial, where, as has been stated, the circuit judge, sitting "as a jury," found the issues in favor of the will.

From the foregoing facts it is apparent that the testatrix desired and intended to destroy her will and die intestate; but the law is well settled that an intention to revoke, however strongly expressed, is not sufficient. The intention to revoke and some act of destruction must concur in order to effect a revocation.

Mr. Pritchard, in his valuable work on Wills, at section 266, announces the rule as follows:

"Revocation is the act of the mind demonstrated by some outward sign. It is, first of all, a question of intention; but that intention must be shown by some act done or believed to be done to give it affect. An unexecuted intention to revoke, no matter how often declared or strongly made, cannot have the effect to avoid a will, unless the intention be accompanied by some act designed to carry out the purpose of revocation. On the other hand, an act of absolute destruction is not a revocation, if the intention to revoke be clearly wanting. It is the purpose of the mind that gives character to the act; and the intention to revoke must concur with some act of cancellation, mutilation or destruction done or attempted, to effect the revocation of a will. If they do so concur, the will is as effectually revoked as if it had never been executed, and can never be set up unless re-executed."

To the same effect is the holding of this court in *Ford* v. *Ford,* 7 Humph., 92; *Smiley* v. *Gambill,* 2 Head, 164.

It cannot be controverted that whatever authority the testatrix gave her husband or daughter to destroy her will ended with her death. When the husband promised the

testatrix that he would destroy the will, and that it would never be set up, the testatrix knew that the will was being placed back in the receptacle from which it had been taken, and was being returned to its accustomed place of safety. No act of mutilation, cancellation, or destruction was committed by the testatrix, or any one else at her direction. The will had been returned to the receptacle in which it was kept with the belief by the testatrix, at most, that at some future time it would be destroyed by her husband. But it was not destroyed prior to her death twelve hours later, and could not be legally destroyed by any one after her death. It is stated by the daughter that the will was not at that time destroyed, because there was no fire in the room, and she did not want to excite her mother, but wanted to keep her from worrying. This cannot excuse the plain requirement of the law that some act of cancellation, mutilation, or destruction must concur with the express intent to revoke.

There is no evidence tending to show that the testatrix was prevented from carrying her intention to revoke into effect by force, fraud, or mistake.

It results, therefore, that, one of the essential elements in the revocation of a will being absent, the will was not legally revoked.

The judgment of the court of civil appeals will therefore be affirmed.