JOHNNY S. TERRELL et al.

*v.*

LUCY TERRELL

(*Knoxville,* September Term, 1955.)

(May Session, 1956)

Opinion filed June 8, 1956.

PRIVETTE & MORTON, Knoxville, for petitioner.
DANNEL & FOWLER, Loudon, for respondent.

Mr. Chief Justice Neil delivered the opinion of the Court.

This suit had its origin in the Chancery Court of Loudon County wherein Johnny Terrell by his mother as next friend, June Terrell, filed his original bill to set up a lost deed to a house and lot in Lenoir City, Tennessee. The bill charges that the property was formerly owned by Dr. L. L. Terrell and wife, June Terrell, who executed a deed to said property to the defendant, Lucy Terrell, a sister of Dr. Terrell, who, on the same day, executed her deed to Johnny Terrell. The bill charged that the grantors had a verbal understanding with Lucy that she would convey the property to Johnny, and that she did so, but that said deed was lost before it was put to record and could not be found after diligent search. Complainant further charged that notwithstanding the oral agreement between the grantors and Lucy Terrell, the grantee, she refused to execute her deed, resulting in this suit. The bill further alleges that Dr. Terrell until his death on April 10, 1952, exercised complete control over the property, collecting rents, and for several months after his death the rent was paid to June Terrell.

The bill prayed that upon the hearing the lost deed from the defendant be set up by decree of the court and that the defendant be required to re-execute and deliver another deed conveying said property to complainant; or, that the defendant be adjudged as holding title to said property in trust for said complainant; or, that the title be divested out of the said Lucy Terrell and vested in the complainant.

The defendant answered the bill and denied that she had ever executed a deed reconveying the property to Johnny. Terrell, denied that she had any oral agreement to do so, denied she was holding the property in trust for complainant, and denied that June Terrell, as guardian for her son, Johnny, had made diligent search for the lost deed. She specifically plead (1) judicial estoppel; (2) statute of frauds; and (3) unclean hands of the grantors. She further averred that the conveyance to her by complainant's parents, Dr. Terrell and June Terrell, was for the specific purpose of defrauding his creditors, and particularly to avoid the payments of alimony due by Dr. Terrell to his former wife, Martha Terrell, whom he divorced on January 14, 1941, only 26 days before marrying June, his second wife.

The evidence before the Chancellor was voluminous. After due consideration of the facts he held that the proof was insufficient to establish a lost deed, holding specifically that there was no showing that a diligent search had been made for it; that the conveyance to Lucy Terrell was made in fraud of creditors and that the complainant was in court "with unclean hands"; that the fraud of complainant's parents was imputable to their son, Johnny Terrell, and the latter's claim could rise no higher than those through whom he claimed. For the foregoing reasons the bill was dismissed.

The complainant was granted an appeal to the Court of Appeals and that court reversed the Chancellor for the following reasons:

"After reviewing the record, we are constrained to reverse the decree of the learned Chancellor on grounds that complainant is not seeking to set aside a conveyance made by grantors for the purpose of defrauding

creditors, as insisted by the defendant, but to set up a lost deed to property to which complainant, a minor, already had a vested title by reason of a deed executed by the defendant; that complainant's hands being clean with respect to the immediate transaction, and no creditors claiming that the conveyance was for a fraudulent purpose, the maxim of unclean hands would be inapplicable."

We granted *certiorari,* and the issues have been ably argued by counsel for the respective parties.

The errors assigned in the petition for *certiorari* complain (1) that the decree of the Court of Appeals is erroneous because "the law and the facts are not as found by said Court, in these particulars"; the court should have held that original complainant is judicially estopped to assert and claim title to the property in controversy; that the original complainant can rise no higher than the grantors, since his predecessors and ancestors would be judicially estopped, etc. (2) "The Court erred in holding that the equitable doctrine of unclean hands has no application unless the alleged wrongful conduct of complainant appears to have injured, damaged or prejudiced the party invoking the doctrine."

Assignments 3 and 4 are practically a repetition of the foregoing assignment relating to the maxim of "unclean hands".

In the fifth assignment of error contention is made that the court erred in holding that the evidence relating to the oral agreement that Lucy Terrell would reconvey the property to Johnny "was clear, cogent and convincing".

Before proceeding to a discussion of the merits of these assignments of error we will briefly mention some

undisputed facts which have a bearing upon the principal controversial issues. Dr. L. L. Terrell was divorced from his wife, Martha, in 1941. She had a claim against him for unpaid alimony in the sum of $13,000. This was compromised by Dr. Terrell paying her $10,000. He paid no further alimony, and no steps were taken by Martha Terrell to collect any further monthly payments of alimony. Martha Terrell is not a party to the present action. All the parties herein reside in the State of Kentucky where Dr. Terrell practiced medicine. He at one time resided with his second wife, June, in Lenoir City, Tennessee, at which time they purchased the house and lot in question and *owned it as tenants by the entireties.*

There can be no difference of opinion on the question of Dr. Terrell having trouble with his former wife, Martha, with regard to the payment of alimony. However, this trouble seems to have ceased upon the payment of $10,000 above mentioned. No effort was made thereafter by Martha Terrell to subject any property owned by Dr. Terrell to the satisfaction of any judgment she may have had against him. She filed no intervening petition in the present action claiming that the deed to Lucy Terrell was for the purpose of defrauding her of any right as a creditor.

We granted *certiorari* because the Court of Appeals and the Chancellor were in sharp disagreement upon both questions of law and fact. A memorandum was filed requesting counsel to discuss the following determinative issues:

(1) Is the doctrine of judicial estoppel applicable to this case?

(2) Whether or not the maxim of unclean hands is applicable?

(3) Was the deed from Dr. Terrell and wife to Lucy Terrell a fraudulent conveyance, and, if so, what about its legal effect upon the rights of Martha Terrell to have her decree of divorce fully satisfied? In other words, why should she not be adjudged a judgment creditor of her former husband?

The defendant invokes the doctrine of judicial estoppel on the ground that Dr. Terrell in his divorce proceeding testified he had sold the Lenoir City property for $10,000 and hence had no title to it. In support of this insistence the counsel relies upon *Melton v. Anderson,* 32 Tenn. App. 335, 222 S.W.2d 666, 670, and more especially upon the following quotation from the opinion: ''The general rule is that when parties, if living, would be estopped, *their heirs and privies in estate are likewise estopped.''* (Emphasis supplied by counsel.)

The fatal weakness of the foregoing contention is found in the fact that complainant, Johnny S. Terrell, 14 years of age, is not prosecuting this case as the heir of his deceased father, Dr. Terrell. But it is being prosecuted pursuant to a trust agreement between his father and mother on one hand and Lucy Terrell on the other. He had no part in the foregoing agreement. June Terrell joined in the deed to the property in question, and, she, being a tenant by the entirety with Dr. Terrell, is not estopped. The complainant is as much the heir of his mother as of the father. But aside from this question of relationship, we hold that the doctrine of estoppel cannot be invoked by one who is a party to a fraudulent transfer of property for the purpose of protecting his title as grantee. It seems to be settled law in this State that ''Estoppel can never be relied on to create right, although it may be urged for the protection of right.''

*Henry County v. Standard Oil Co.,* 167 Tenn. 485, 71 S.W.2d 683, 93 A.L.R. 1483.

"The doctrine of estoppel is for the protection of innocent persons, and only the innocent may invoke it. * * * A person may not predicate an estoppel in his favor on, or assert such estoppel for the purpose of making effective, obtaining the benefit of, or shielding himself from the results of, his own fraud, * * *." 31 C.J.S., Estoppel, sec. 75, p. 281.

We are constrained to hold, as did the Court of Appeals, that the doctrine of judicial estoppel is not applicable to the case at bar and is not available as a defense to this suit.

■ Coming now to the question of whether or not the maxim, "He who comes into equity must have clean hands," is applicable to complainant, without reciting in detail the evidence relating to the execution of the two deeds in question, we think there is abundant proof to sustain the finding by the Court of Appeals (1) that Dr. Terrell and his wife, June, executed and delivered a deed to Lucy Terrell to the property in Lenoir City; and (2) that she thereupon executed a deed to the same property to Johnny Terrell. When Lucy Terrell was asked concerning this house and lot in Lenoir City, she stated to several persons that the property belonged to "Johnny". This deed was delivered to Dr. Terrell and by him placed in a table drawer on the sun porch of his home in Woodbine, Kentucky, where he customarily kept his valuable papers. According to the testimony of June Terrell this transfer of the property by deed "was decided upon to insure Johnny's education." When the time came to probate the will of Dr. Terrell (April 14, 1952), there was a conference in the office of Attorney Upton regard-

ing the property of the testator. According to the testimony of Mr. Upton, June Terrell, and a Mrs. Robinson, the defendant stated, ''That property (meaning the property here involved) belongs to Johnny. I have already made him a deed.'' When asked where the deed was June Terrell stated, ''It is in the drawer of the library table at my home.'' She further testified that she later searched for the deed but could not find it. She thereupon requested Lucy Terrell to go to an attorney and execute another deed so it could be recorded, and that Lucy Terrell replied, ''it was taken care of and not to worry about it.''

It appears that later on Lucy Terrell flatly refused to execute another deed, denying that she had ever executed a deed to Johnny Terrell. Upon a careful examination of the record and transcript of all the evidence we think that Lucy Terrell executed this deed to Johnny, and that it was a valid conveyance.

■ Now, was the doctrine of ''unclean hands'' applicable to Lucy Terrell's grantee, Johnny Terrell? We agree with the Court of Appeals that it cannot so apply. She alone is pleading ''unclean hands'' of Dr. Terrell, taking no thought of her own conduct, to protect her title to the property in question. The fraud by which she claims to be holder of the title is not imputable to her vendee; he was wholly innocent of any wrong.

The able counsel for Lucy Terrell relies strongly upon *King v. Pillow,* 90 Tenn. 287, 16 S.W. 469, and insists that the Court's holding ''has become practically a rule of property in Tennessee.'' The case involved a lost deed *based upon immoral considerations,* which was that King would divorce his wife and marry Mrs. Pillow. In the case at bar there was no such consideration. A

casual reading of the opinion will show that it has no application.

In further support of the insistence that the fraud of Dr. Terrell, if any, is imputable to Johnny Terrell, the counsel relies upon *Owens v. Owens,* 21 Tenn.App. 104, 106 S.W.2d 227. Reference is also made to *Thomas v. Hedges,* 27 Tenn.App. 585, 183 S.W.2d 14.

The cases are not in point because the deeds in question were not made in fraud of creditors. As noted heretofore in this opinion there were no creditors to be defrauded, and Mrs. Martha Terrell asserted no claim against the property to satisfy any decree for present or future alimony. Nor can it be said that the fraud complained of is imputable to Johnny Terrell as an heir of Dr. Terrell, because he is asserting no claim as an heir of his deceased father.

The case of *Owens v. Owens, supra,* was a suit by a son against his father, the former claiming title by virtue of a fraudulent deed. It has no application here. In the instant case the maxim of "unclean hands" is invoked by Lucy Terrell to enable her to retain title to property to which she has already executed a valid deed of conveyance to the complainant.

But conceding that the original deed from Dr. Terrell and wife, June, was intended as a fraudulent hindrance to Martha Terrell's claim to alimony, under our decisions the reconveyance by Lucy Terrell to Johnny Terrell is a valid conveyance. In *Insurance Co. of Tennessee v. Waller,* 116 Tenn. 1, 95 S.W. 811, 813, it is held:

"It is now well-settled law in Tennessee that a contemporaneous parol agreement, made at the time of the execution and delivery of a conveyance of real estate, absolute upon its face, that the vendee will hold

the property conveyed in trust for a certain person, is not within the statute of frauds, and, aside from the rights of creditors of the original vendor and innocent purchasers from the vendee, vests in the ,beneficiary of the trust a valid equitable title to the property conveyed, which a court of equity will enforce. We need only refer to the recent cases in which the reasons for the rule are fully and clearly stated. They are *Thompson v. Thompson* (Tenn.Ch.App.) 54 S.W. 145; *Renshaw v. First Nat. Bank* (Tenn.Ch.App.) 63 S.W. 194, 205-296; *Woodfin v. Marks,* 104 Tenn. [512] 519, 520, 58 S.W. 227; *Mee v. Mee,* 113 Tenn. [453] 455, 82 S.W. 830.''

In *People's Bank of Springfield v. True,* 144 Tenn. 171, at page 176, 231 S.W. 541, at page 542, it is said:

'' 'While a fraudulent grantee is under no legal obligation to reconvey, it is said he is under moral obligation to do so, and all subsequent acts done by him in execution of this duty should be favorably considered in equity. If in fulfillment of his moral obligation he makes a reconveyance, such act will be binding on him, and if the rights of no innocent third person have intervened, the fraudulent grantor will become revested both in law and equity with the title previously conveyed to his grantee; and the grantee will be estopped from thereafter setting up any claim to the property.' 20 Cyc., 619.

''This rule is recognized in at least two cases in Tennessee.''

As supporting authority the Court cites *Stanton v. Shaw,* 62 Tenn. 12, and also *Insurance Co. of Tennessee v. Waller, supra.* To the same effect may be found a number of decisions from foreign jurisdictions. Thus

in *Hurwitz v. Hurwitz*, 78 U.S. App. D.C. 66, 136 F.2d 796, 798, 148 A.L.R. 226, it is said: "A court should not enrich a fraudulent grantee at the expense of parties not responsible for the original grantor's attempt to avoid creditors." See also 37 C.J.S., Fraudulent Conveyances, sec. 267 (e. Effect of Voluntary Reconveyance), pp. 1101, 1102, and cases cited.

The complainant being innocent of any wrong in the original transaction should not be repelled from court on the ground of "unclean hands", or any claim of unjust enrichment.

In conclusion we find no merit in the contention that the bill should be dismissed upon the theory that the transaction between Dr. Terrell, his wife, June, and Lucy Terrell was in fraud of Martha Terrell's right to subject the Lenoir City property to the satisfaction of her judgment for alimony. The defendant has no standing in court to raise this question as a defense to her right to retain title to the property, which she had voluntarily conveyed to Johnny Terrell.

The assignments of error are overruled, and the decree of the Court of Appeals is affirmed. The cause is remanded to the Chancery Court for such further orders and decrees, consistent with this opinion, as may be necessary to effect title and possession of the complainant.