232 So.2d 431 (1970)
In re ESTATE OF Adrian BANCKER, Deceased.
No. 2504.
District Court of Appeal of Florida, Fourth District.
March 11, 1970.
Rehearing Denied April 17, 1970.
Richard Kirsch and Dieter K. Gunther, of Kirsch & Druck, Fort Lauderdale, for appellant Isabelle D. Bancker.
Richard M. White, of Shutts & Bowen, Miami, for appellees Adrian Gerard Bancker, Jr., Audrey Bancker Tooker and Patricia Bancker Duane.
WALDEN, Judge.
Isabelle Bancker, decedent's wife, brought this appeal from an order by the County Judge in Broward County which revoked a 1962 will executed by the decedent; revoked the letters testamentary issued to the widow; denied a petition to establish a 1966 will; and finally, determined that the decedent died intestate.
Adrian G. Bancker, the decedent, died in April 1967, survived by his wife, three natural children, and a step-daughter. In 1962 the decedent executed a will which was amended by a 1965 codicil. However, in 1966 the testator executed a second will, the only material change being the inclusion of a different alternative executor. Some six months later the testator became disenchanted with his attorney who drew the second will and who named himself the alternative executor. The decedent's first attorney, who drew the 1962 will, informed the decedent that he could reinstate the first will by destroying the 1966 will. The decedent subsequently directed his wife, step-daughter, and her husband to destroy the 1966 will.
The decedent remained in his bed, although he was not bedridden, while his wife, step-daughter, and her husband went into another room, removed the will from a wall safe and destroyed it by tearing it into pieces and flushing them down a toilet. The decedent's bedroom was separated from the den in which the wall safe was located by a screened terrace. The doors were closed between the decedent and the wall safe and he could not see the destruction. He was informed subsequently that it had been done and he nodded his head in approval.
The decedent died shortly thereafter. His widow presented the 1962 will for probate and obtained letters testamentary. The natural children attacked this will, alleging lack of testamentary capacity and undue influence. At this point the widow countered by attempting to re-establish the 1966 will for probate. The county judge *432 ruled that the 1962 will was invalid and revoked the letters testamentary. The petition to establish the 1966 will was also denied with the judge holding that the petition did not sufficiently re-establish the will because the judge did not believe the account of how the will was destroyed and he felt that to allow the petitioner to avoid the consequences of the destruction she took part in would open the door for fraud. He further stated that if it were necessary to go that far he would have also held that the will was properly revoked. The effect of this ruling was that the decedent died intestate.
We reverse the lower court's decision that the 1966 will was not sufficiently re-established and further find that the will was not properly revoked. A copy of the will was entered into evidence and properly identified by disinterested witnesses as required by Section 732.27(3), F.S. 1967, F.S.A., to re-establish a destroyed will.
We believe that it is readily apparent from a study of the entire record that the decedent did not intend to die intestate. Both attorneys who drafted wills for the testator testified that he wanted everything to go to his wife if she survived him. This conclusion is also obvious from the contents of both wills. Apparently the decedent attempted to revoke his second will because he wanted to exclude the possibility that the attorney who drew it might become the executor. Further, he seemed to be under the impression that the destruction would re-instate the 1962 will which was practically identical in content. The intention of the testator has always been the primary consideration in construing wills, Morgenthaler v. First Atlantic National Bank of Daytona Beach, Fla. 1955, 80 So.2d 446, and we feel it should be kept in mind in deciding whether the account of the destruction of the will was credible. We find that the story of the destruction was logical in light of the intent of the testator and that the destroyed will was sufficiently re-established.
As to the question of whether the will was properly revoked by the destruction, the Florida Probate Law, F.S. 731.14(1), F.S.A., provides:
"A will may be revoked by the testator himself or by some other person in his presence and by his direction, by burning, tearing, canceling, defacing, obliterating or destroying the same, with the intent and for the purpose of revocation." (Emphasis supplied.)
This statute specifically provides the revocation must be made in the presence of the testator. Under this statute, such revocation must take place in the physical and mental presence of the testator. Redfearn, Wills and Administration of Estates in Florida, 3d Ed., Sec. 88; 26 F.L.P., Wills, § 94. The requirements for a valid revocation of a will must be strictly observed. In re Estate of Shifflet, Fla.App. 1964, 170 So.2d 96, and In re Estate of Gross, Fla. App. 1962, 144 So.2d 861. This interpretation is given further support in view of the fact that the phrase "in his presence" was added to the statute by amendment in 1933. Thus, it appears that the legislature sought to require the destruction to be in the actual presence of the testator.
In the case of In re Estate of Gross, supra, the Third District Court held that the burning of the will by an individual at a time when the testator was in a different city did not serve to revoke the will even though the individual who had burned it was acting upon the testator's instructions. The court further stated that substantial compliance was not sufficient, and the directions of the statute must be followed and its conditions met.
Likewise, in In re Estate of Shifflet, supra, the Third District Court required strict compliance with the statutory provision for the creation of a will. The testatrix made changes in her will, writing her initials in the margin opposite each change. The court held that this attempted partial revocation must comply with the statutory requirements for the creation of a will. *433 The initials, even assuming they constituted her signature, were not effective to partially revoke the will because they were not at the end of the will as required by Section 731.07(1), F.S. 1967, F.S.A.
Thus, strict compliance with the statutory requirements is a prerequisite for the valid creation or revocation of a will.
For the reasons above stated we reverse the lower court's ruling that the 1966 will was not sufficiently re-established for probate and further find that it was not properly revoked. We do not foreclose the right of appellees to challenge the probate of the will upon remand upon other grounds as they are advised.
Reversed and remanded.
REED and OWEN, JJ., concur.